**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS SAN ANTONIO DIVISION**

| | |
|---|---|
| FAIR HOUSING COUNCIL OF GREATER SAN ANTONIO, | |
| Plaintiff, | |
| v. | Case No. 5:21-cv-238 |
| HOMESPRING RESIDENTIAL SERVICES, LLC; SAN ANTONIO HOUSING TRUST PUBLIC FACILITY CORPORATION; HILLCREST SA APARTMENTS, LP; HILLCREST LIVING GP, LLC; FREEDOM SA APARTMENTS, LP; ELLISON HILLS LIVING GP, LLC; BEXAR MANAGEMENT AND DEVELOPMENT CORPORATION; MEDIO SPRINGS, LP; MEDIO LIVING GP, LLC; 280SA EAGLE RIDGE, LTD.; COMMONWEALTH TEXAS (EAGLE RIDGE), LLC; COMMONWEALTH HOUSING CORPORATION; COMMONWEALTH SA-APARTMENTS, LLC; COMMONWEALTH TEXAS (WILLOW BEND) LTD., | |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEFAND DEMAND FOR JURY TRIAL

1.      Plaintiff Fair Housing Council of Greater San Antonio ("Plaintiff" or

"FHCOGSA") brings this suit against HomeSpring Residential Services, LLC, San Antonio

Housing Trust Public Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP,

LLC, Freedom SA Apartments, LP, Ellison Hills Living GP, LLC, Bexar Management and

Development Corporation, Medio Springs, LP, Medio Living GP, LLC, 280SA Eagle Ridge,

Ltd., Commonwealth Texas (Eagle Ridge), LLC, Commonwealth Housing Corporation,

1

Commonwealth SA-Apartments, LLC, and Commonwealth Texas (Willow Bend) Ltd. (collectively, "Defendants") for unlawful discrimination against people with disabilities, under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.*, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and the Texas Fair Housing Act, Tex. Prop. Code § 301.025.

2.  Defendants own or manage five multifamily housing developments in San Antonio. At these developments, Defendants participate in Texas's Low-Income Housing Tax Credit program and receive tax credits in exchange for providing housing at rents that are affordable to low-income households. Defendants treat tenants with disabilities unfavorably and make it difficult or impossible for them to rent and fully use and enjoy the affordable units.

3.  Defendants have several policies and practices that discriminate against tenants with disabilities. Defendants fail to provide and pay for reasonable modifications, such as grab bars in the bathroom, that enable tenants with disabilities to fully use and enjoy their rental units. Additionally, Defendants fail to properly engage in the interactive process with tenants who request reasonable modifications, make tenants provide unnecessary documentation about their disabilities and need for modification, and/or unduly delay providing reasonable modifications. Defendants' pattern of differential treatment has remained unchanged since at least 2017.

4.  Plaintiff FHCOGSA uncovered Defendants' discriminatory policies and practices through its investigation of Defendants' properties and through its community education and outreach efforts. Defendants' unlawful policies and practices have frustrated and impaired Plaintiff's mission to promote fair housing and eliminate discriminatory housing practices across South Texas. FHCOGSA has been forced to divert significant resources to counteract Defendants' conduct. FHCOGSA launched an education and outreach campaign aimed at

residents of Defendants' properties, assisted those residents in securing reasonable modifications at Defendants' properties, and conducted a fulsome investigation of Defendants' properties, including on-site testing and tenant surveys. FHCOGSA has redirected its resources and recalibrated its activities to mitigate the real-world impact of Defendants' unlawful conduct.

5.      Plaintiff seeks injunctive relief, declaratory relief, and damages for Defendants' continuing violation of the federal Fair Housing Act, 42 U.S.C. § 3604, Section 504 of the Rehabilitation Act, and the Texas Fair Housing Act, Tex. Prop. Code § 301.025. Absent judicial redress, Defendants will maintain their discriminatory policies and practices, and the consequent injury to FHCOGSA – and to the individuals with disabilities in San Antonio whom Plaintiff serves – will continue.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because it arises under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367. Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because most events and omissions giving rise to Plaintiff's claims occurred in this District and most Defendants reside in this District.

## PARTIES

8.      Plaintiff Fair Housing Council of Greater San Antonio, Inc. is a 501(c)(3) nonprofit organization incorporated in Texas, with its principal place of business at 4414 Centerview Drive, Suite 229, San Antonio, Texas 78228. It is dedicated to promoting fair housing and eliminating discriminatory housing practices in the areas of rental housing, real

estate sales, mortgage lending, and homeowners' insurance across South Texas. FHCOGSA works to eliminate housing discrimination and to ensure equal opportunity for all people through advocacy, education and outreach, investigation, and enforcement.

9.      Defendants are corporations that own or manage five affordable multifamily housing developments in San Antonio: (1) Woodlawn Ranch Apartments at 330 W. Cheryl Drive, San Antonio, Texas 78228, (2) Freedom Hills Ranch Apartments at 6010 Ray Ellison Drive, San Antonio, Texas 78242, (3) Medio Springs Ranch Apartments at 1530 Marbach Oaks Road, San Antonio, Texas 78245, (4) Eagle Ridge Apartments at 3703 Wurzbach Road, San Antonio, Texas 78238, and (5) Willow Bend Apartments at 8330 Potranco Road, San Antonio, Texas 78251 (collectively, "the Developments"). The Developments are subject to Land Use Restriction Agreements ("LURA") as part of their participation in Texas's Low-Income Housing Tax Credit ("LIHTC") program. Woodlawn Ranch Apartments and Freedom Hills Ranch Apartments also receive federal financial assistance, including in the form of Project-Based Section 8 Rental Assistance from the United States Department of Housing and Urban Development ("HUD").

10.     Defendant HomeSpring Residential Services, LLC ("HomeSpring") is the property manager of the Developments. HomeSpring is a Texas Limited Liability Company incorporated in Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

11.     Defendant San Antonio Housing Trust Public Facility Corporation is an owner of Woodlawn Ranch Apartments and Freedom Hills Ranch Apartments. It is a signatory as Development Owner on the LURAs for Woodlawn Ranch Apartments and Freedom Hills Ranch

Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 2515 Blanco Road, San Antonio, Texas 78212.

12.     Defendant Hillcrest SA Apartments, LP is an owner of Woodlawn Ranch Apartments. It is a signatory as Development Owner on the LURA for Woodlawn Ranch Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

13.     Defendant Hillcrest Living GP, LLC is an owner of Woodlawn Ranch Apartments. It is a signatory as Development Owner on the LURA for Woodlawn Ranch Apartments. It is organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

14.     Defendant Freedom SA Apartments, LP is an owner of Freedom Hills Ranch Apartments. It is a signatory as Development Owner on the LURA for Freedom Hills Ranch Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

15.     Defendant Ellison Hills Living GP, LLC is an owner of Freedom Hills Ranch Apartments. It is a signatory as Development Owner on the LURA for Freedom Hills Ranch Apartments. It is organized under the laws of Texas, with its principal place of business at 2515 Blanco Road, San Antonio, Texas 78212.

16.     Defendant Bexar Management and Development Corporation is an owner of Medio Springs Ranch Apartments. It is a signatory as Development Owner on the LURA for Medio Springs Ranch Apartments. It is organized under the laws of Texas, with its principal place of business at 6243 W. Interstate 10, Suite 1025, San Antonio, Texas 78201.

17. Defendant Medio Springs, LP is an owner of Medio Springs Ranch Apartments. It is a signatory as Development Owner on the LURA for Medio Springs Ranch Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 1954 E. Houston Street, Rm. 104, San Antonio, Texas 78202.

18. Defendant Medio Living GP, LLC is an owner of Medio Springs Ranch Apartments. It is a signatory as Development Owner on the LURA for Medio Springs Ranch Apartments. It is organized under the laws of Texas, with its principal place of business at 1954 E. Houston Street, Rm. 104, San Antonio, Texas 78202.

19. Defendant 280SA Eagle Ridge, Ltd. is an owner of Eagle Ridge Apartments. It is a signatory as Project Owner on the LURA for Eagle Ridge Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

20. Defendant Commonwealth Texas (Eagle Ridge), LLC is an owner of Eagle Ridge Apartments. It is a signatory as Project Owner on the LURA for Eagle Ridge Apartments. It is organized under the laws of Texas, with its principal place of business at 260 N. Sam Houston Parkway East, Suite 300, Houston, Texas 77060, and its registered office at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

21. Defendant Commonwealth Housing Corporation is an owner of Eagle Ridge Apartments. It is a signatory as Project Owner on the LURA for Eagle Ridge Apartments. It is organized under the laws of Delaware, with its principal place of business at 1530 NW Crossroads, Apt. 1224, San Antonio, Texas 78251, and its registered office at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

22.     Defendant Commonwealth SA-Apartments, LLC is an owner of Willow Bend Apartments. It is a signatory as Project Owner on the LURA for Willow Bend Apartments. It is organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213, and its registered office at 260 N. Sam Houston Parkway East, Suite 300, Houston, Texas 77060.

23.     Defendant Commonwealth Texas (Willow Bend) Ltd. is an owner of Willow Bend Apartments. It is a signatory as Project Owner on the LURA for Willow Bend Apartments. It is a Texas Limited Partnership, organized under the laws of Texas, with its principal place of business at 1618 Lockhill Selma Road, San Antonio, Texas 78213.

24.     In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

25.     In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by one or more Defendants as principal.

## FACTUAL BACKGROUND

### A.  The Need for Accessible, Affordable Housing in San Antonio

26.     There are hundreds of thousands of San Antonians with ambulatory, vision, and/or hearing disabilities, and many of these individuals with disabilities need housing that is affordable and accessible.

27.     People with disabilities face many barriers to employment, and, as a result, a disproportionate percentage are low-income and require either housing-payment assistance or

subsidized housing. Only 40.8% of people with disabilities in Texas are employed, and 23.5% live below the federal poverty line; in comparison, 78.8% of people without disabilities in Texas are employed, and 11.1% live below the federal poverty line.

28.     Many people with disabilities need reasonable modifications to existing rental units, such as grab bars in the shower and by the toilet, entry ramps, and knee space under the sink. These types of modifications enable people with disabilities to perform many basic and essential functions of daily life and fully use and enjoy their homes.

29.     There is an overall shortage of affordable housing in San Antonio that is exacerbated for people with disabilities when housing providers treat them unfavorably. As a result, it is very difficult for low-income individuals with disabilities – one of the most vulnerable groups of residents in San Antonio – to find a place to live. Defendants' discriminatory policies and practices, such as failing to provide and pay for reasonable modifications or creating hurdles in the process of requesting reasonable modifications, has the purpose and effect of constricting the already limited pool of housing for low-income San Antonians with disabilities.

**B.  Defendants Have Policies and Practices That Discriminate Against Tenants with Disabilities**

30.     In 2019, Plaintiff investigated Woodlawn Ranch Apartments, Freedom Hills Ranch Apartments, Medio Springs Ranch Apartments, Eagle Ridge Apartments, and Willow Bend Apartments by conducting tenant surveys, on-site testing, and other research. As described below, Plaintiff's investigation confirmed that Defendants, as the manager or owners of these properties, maintain a host of discriminatory policies and practices against tenants with disabilities. Defendants fail to pay for reasonable modifications, fail to engage in the interactive process with tenants who have requested a reasonable modification, require tenants to submit

extraneous information about their disabilities and need for modification, and/or unduly delay the provision of reasonable modifications.

### i. Discrimination Against Residents of Defendants' Developments

31.     Plaintiff's investigation and education and outreach campaign revealed the stories of many residents of the Developments who experienced Defendants' discrimination against tenants with disabilities.

32.     At Woodlawn Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, and San Antonio Housing Trust Public Facility Corporation , a resident requested grab bars in the bathroom because he had a medical condition that caused varying degrees of stiffness, pain, and balance issues and had fallen several times trying to get in and out of his tub. Management told him that he needed to pay for the grab bars and installation, and the resident purchased the grab bars at his own expense. After this resident received FHCOGSA's mailing about reasonable modifications, he contacted FHCOGSA and described his circumstances. FHCOGSA then intervened on his behalf and got management to install the grab bars in September 2019.

33.     At Freedom Hills Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Freedom SA Apartments, LP, Ellison Hills Living GP, LLC, and San Antonio Housing Trust Public Facility Corporation, a resident asked for grab bars in the shower due to a disability when she first moved in around 2017, but management told her that she would have to pay $300 for installation. As of 2019, she still needed grab bars in the shower, as well as a toilet with grab bars.

34.     At Medio Springs Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Medio Springs LP, Medio Springs GP, LLC, and Bexar Management

and Development Corporation, a resident requested a raised toilet and grab bars in his bathroom due to a disability. Upon move-in, management assured him that it would modify his unit, but it failed to do so for five months. Management started working on the modifications only after FHCOGSA was contacted by the resident and intervened on his behalf. Even then, management ignored his request for a specific toilet that would meet his exact disability-related needs and installed a different toilet without engaging in an interactive process.

35.     At Eagle Ridge Apartments, which is owned and/or operated by Defendants HomeSpring, 280SA Eagle Ridge, Ltd., Commonwealth Texas (Eagle Ridge), LLC, and Commonwealth Housing Corporation, a resident who uses a walker asked management to remove the carpet flooring in her unit so she could properly maneuver inside the unit with her walker. She had fallen several times trying to roll her walker over bunched-up carpet. Management asked her to pay $1,200 for the modification. After FHCOGSA learned about the resident's circumstances through her survey response and intervened on her behalf, management replaced the carpeting in August 2019.

36.     Other Eagle Ridge Apartments residents had similar experiences. Around 2017, when one resident requested grab bars in the bathroom, management asked her for medical documentation, even though her disability and need for the modification were obvious because she was in a wheelchair. After the resident submitted a letter from her doctor, management told her that she needed to pay for the grab bars. Because the resident was unable to afford the cost, the grab bars were never installed.

37.     Another Eagle Ridge Apartments resident requested grab bars in the bathroom due to her mobility issues, but management refused. She also asked that her carpets be replaced and her floors be cleaned due to animal remnants to which she is allergic. In response,

management told her she would have to pay an additional deposit to move to a different apartment. She did not move to a different unit because she could not afford the deposit, and because the location of her unit was well-suited for her other disability-related needs, and she instead requested that management clean the carpets and floor of her unit. As of April 12, 2021, she does not have grab bars or clean carpets or floors.

38. At Willow Bend Apartments, which is owned and/or operated by Defendants HomeSpring, Commonwealth Texas (Willow Bend), Ltd., and Commonwealth SA Apartments, LLC, a resident requested grab bars and a raised toilet in the bathroom to accommodate her disability, but management told her that she had to pay for them. After FHCOGSA intervened on her behalf, management installed the modifications. For another Willow Bend Apartments resident, it took four years for management to install a deaf/hard of hearing smoke detector.

39. Taken together, experiences of residents at the Developments paint a clear and troubling picture: Defendants maintain a host of discriminatory policies and practices, including shifting the cost of reasonable modifications onto low-income tenants. Additionally, Defendants HomeSpring, Medio Springs LP, Medio Springs GP, LLC, and Bexar Management and Development Corporation fail to properly engage in the interactive process; Defendants HomeSpring, 280SA Eagle Ridge, Ltd., Commonwealth Texas (Eagle Ridge) LLC, and Commonwealth Housing Corporation require tenants to submit extraneous information about their disabilities and need for modification; and Defendants HomeSpring, Commonwealth Texas (Willow Bend), Ltd., and Commonwealth SA Apartments, LLC unduly delay the provision of reasonable modifications. Defendants' discriminatory pattern has remained unchanged since at least 2017.

### ii. On-Site Testing of Defendants' Properties

40.     In March and April of 2019, Plaintiff sent a tester to investigate each of the Developments, which are owned or managed by Defendants. Plaintiff provided training and instructions to the tester, who conducted all five tests. The tester visited the Developments with the same purpose: to obtain information from property management staff regarding the possibility of making disability-related modifications to an apartment unit.

41.     At each property, the tester informed a leasing agent that her husband, who was not present during the test, had a disability and used a wheelchair. The tester then asked the agent whether management could pay for the installation of grab bars in the bathroom and the lowering of peepholes and closet rods. The tester recorded all five tests and completed a comprehensive form setting out the results for each test.

42.     The results were consistent across all five tests: Defendants would not agree to pay the cost of reasonable modifications as required under law or the LURA. Additionally, Defendants HomeSpring, Freedom SA Apartments, LP, Ellison Hills Living GP, LLC, and San Antonio Housing Trust Public Facility Corporation requested information about the tester's husband's disability, even though the tester indicated that he used a wheelchair, meaning that both his disability and his disability-related need for a modification were readily apparent.

### a. Medio Springs Ranch Apartments

43.     At Medio Springs Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Medio Springs LP, Medio Springs GP, LLC, and Bexar Management and Development Corporation, when the tester disclosed her husband's disability and asked whether management would pay for grab bars in the bathroom and the lowering of peepholes and

closet rods, the leasing agent informed the tester that modifications to apartment units would come at the renter's expense.

44.     The agent said that the property had accessible units, but was unsure whether the tester's requested modifications were in place in those units. In any case, no accessible units were available to rent, and there was no waiting list for such units. The agent advised the tester to either call management or return to the property in a few months to see if any accessible units had become available.

### b. Woodlawn Ranch Apartments

45.     At Woodlawn Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, and San Antonio Housing Trust Public Facility Corporation, when the tester disclosed her husband's disability and asked whether management would pay for grab bars in the bathroom and the lowering of peepholes and closet rods, the leasing agent informed the tester that she would have to pay for the requested modifications in a standard unit.

46.     The agent advised the tester to note on the rental application form her need for an accessible unit. The agent was unsure whether an accessible unit had the tester's requested modifications already in place and could not confirm whether management would be able to provide any additional modifications in an accessible unit.

### c. Eagle Ridge Apartments

47.     At Eagle Ridge Apartments, which is owned and/or operated by Defendants HomeSpring, 280SA Eagle Ridge, Ltd., Commonwealth Texas (Eagle Ridge), LLC, and Commonwealth Housing Corporation, when the tester disclosed her husband's disability and asked whether management would pay for grab bars in the bathroom and the lowering of

peepholes and closet rods, the agent said that management would not install or pay for the grab bars in the bathroom. Instead, management suggested that tenants have sought help from a third-party program that may or may not pay for the modifications.

48.     According to the agent, some renters in the past had qualified for a program in which outside organizations sponsored modifications to those renters' units. The agent suggested that tenants were responsible for finding those organizations and that, while these third-party organizations may install the modifications, the renter might still have to pay for them.

### d. Willow Bend Apartments

49.     At Willow Bend Apartments, which is owned and/or operated by Defendants HomeSpring, Commonwealth Texas (Willow Bend), Ltd., and Commonwealth SA Apartments, LLC, when the tester disclosed her husband's disability and asked whether management would pay for grab bars in the bathroom and the lowering of peepholes and closet rods, the leasing agent did not know whether management would pay for the requested modifications. When the tester asked if any manager currently could give an answer, the agent told her that nobody could provide that information at that time.

50.     The agent told the tester she would have to fill out an accommodation request form and submit it to management for processing. If management approved the request, they would then let the tester know whether she would have to pay for the modifications.

51.     When asked, the agent could not provide information about what materials a renter would need to submit for the accommodation request and instead told the tester they would need to ask management. No other employees at the property during the test were able to provide this information.

### e. Freedom Hills Ranch Apartments

52.     At Freedom Hills Ranch Apartments, which is owned and/or operated by Defendants HomeSpring, Freedom SA Apartments, LP, Ellison Hills Living GP, LLC, and San Antonio Housing Trust Public Facility Corporation, when the tester disclosed her husband's disability and asked if management would pay for grab bars in the bathroom and the lowering of peepholes and closet rods, the leasing agent could not confirm that management would pay for the requested modifications.

53.     Even though the tester's husband's disability and disability-related need for modifications would have been readily apparent by virtue of his use of a wheelchair, the agent, after checking with a manager, told the tester to submit a rental application requesting the modifications with supplementary documentation of disability, such as a doctor's note. The agent asked the tester to show in the application that the modifications are necessary to "help [the tester's husband's] lifestyle."

## C. Defendants' Obligations to Comply with Section 504 of the Rehabilitation Act

54.     Section 504 of the Rehabilitation Act of 1973 and its implementing regulations at 24 C.F.R. Part 8 "obligate housing providers to make and pay for structural changes to facilities, if needed as a reasonable accommodation for applicants and tenants with disabilities, unless doing so poses an undue financial and administrative burden."[1]

---

[1] Joint Statement of the HUD and the Department of Justice, *Reasonable Modifications Under the Fair Housing Act*, at 6, n.9 (March 5, 2008), *available at* https://www.hud.gov/sites/documents/reasonable_modifications_mar08.pdf); *see also* id. at 16; *Reasonable Accommodations and Modifications,* HUD.gov, *available at* https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodations_an d_modifications#:~:text=Under%20Section%20504%2C%20a%20housing,fundamental%20alter ation%20of%20the%20program ("Under Section 504, a housing provider is required to provide and pay for the structural modification as a reasonable accommodation unless it amounts to an undue financial and administrative burden or a fundamental alteration of the program.").

55.     Defendants are required to comply with Section 504 because of their participation in the federal Low-Income Housing Tax Credit ("LIHTC") program or because of their receipt of federal financial assistance, or both. Defendants are LIHTC program participants, and Defendants HomeSpring, San Antonio Housing Trust Public Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, Freedom SA Apartments, LP, and Ellison Living GP, LLC receive federal financial assistance through their ownership or management of Woodlawn Ranch Apartments and Freedom Hills Ranch Apartments.

56.     The LIHTC program allows investors to finance the acquisition, construction, development, and rehabilitation of multifamily rental housing in exchange for tax credits. The program requires a certain number of units to be leased at rents affordable to low-income families. In Texas, the LIHTC program is administered by the Texas Department of Housing and Community Affairs ("TDHCA") and is called the TDHCA Housing Tax Credit program.

57.     As described by TDHCA, the Housing Tax Credit program "is one of the primary means of directing private capital toward the development and preservation of affordable rental housing for low-income households" in Texas.

58.     As participants in the Housing Tax Credit program, Defendants must abide by their Land Use Restriction Agreements ("LURA") with the TDHCA, which set forth the terms and conditions of each Defendant's participation in the program related to each Development. The LURAs describe the amount of tax credit dollars that Defendants receive annually, the percentage and number of units that Defendants commit to leasing to low-income individuals or families, and other obligations that Defendants must meet to receive tax credits.[2] Defendants'

---

[2] *See* sample LURA attached as Exhibit A.

ongoing participation in the Housing Tax Credit program is contingent upon their continued compliance with the LURA provisions.

59. One obligation placed on each Defendant under the LURAs is compliance with Section 504 of the Rehabilitation Act of 1973. The LURAs expressly incorporate Section 504 by providing that the housing provider "agrees, warrants, and covenants to comply with . . . Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)"; "will comply with the accessibility standards under 24 CFR Part 8, Subpart C which implements 'Section 504 of the Rehabilitation Act of 1973' (29 U.S.C. §794)"; and "shall comply with the accessibility standards that are required under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), and specified under 24 CFR Part 8, Subpart C." Ex. A at 5, 20, 21. Defendants are therefore required to abide by Section 504 in their provision of affordable housing at or through the Developments, including the obligation to bear the cost of disability-related reasonable modifications at the Developments.

**D. Defendants' Violations of Fair Housing and Disability Discrimination Laws**

60. Defendants' discriminatory policies and practices against tenants with disabilities violate federal and Texas fair housing laws.

61. Defendants' failure to pay for disability-related reasonable modifications violates their Section 504 obligations under the LURAs. While Defendants do not abide by this disability-related provision of the LURAs, upon information and belief, they do comply with all other non-disability-related provisions of the LURAs. For example, among other things, Defendants comply with other non-disability-related laws, ordinances, statutes, codes, orders, rules, regulations, and decrees that are incorporated in the LURAs, and they follow the LURA requirements to make a set number of rental units available to low-income households and to

provide special supportive services to residents, such as child care, transportation, basic adult education, and legal assistance.

62.     Accordingly, Defendants fail to comply with their LURA obligations only when they relate to protecting people with disabilities. By selectively ignoring their disability-related obligations in the LURAs, Defendants make housing unavailable and offer people with disabilities housing on different terms and conditions, in violation of the federal Fair Housing Act, 42 U.S.C. § 3604, and the Texas Fair Housing Act, Tex. Prop. Code § 301.025.

63.     Defendants' policies and practices of disregarding their LURA obligations to tenants who need disability-related modifications, while abiding by other, non-disability provisions constitute disparate treatment of people with disabilities.

64.     Defendants' policies and practices of selective compliance of the LURA provisions also have a disparate impact on people with disabilities.

65.     Moreover, by failing to engage in the interactive process, requesting documentation about a tenant's disabilities and need for modification, or unduly delaying the provision of reasonable modifications, Defendants HomeSpring, Freedom SA Apartments, LP, Ellison Hills Living GP, LLC, San Antonio Housing Trust Public Facility Corporation, Medio Springs, LP, Medio Living GP, LLC, Bexar Management and Development Corporation, 280SA Eagle Ridge, Ltd., Commonwealth Texas (Eagle Ridge) LLC, Commonwealth Housing Corporation, and Commonwealth Texas (Willow Bend), Ltd., and Commonwealth SA Apartments, LLC have denied the equal opportunity to use and enjoy a dwelling on the basis of disability, in violation of the federal Fair Housing Act, 42 U.S.C. § 3604, and the Texas Fair Housing Act, Tex. Prop. Code § 301.025.

66.     Additionally, Defendants HomeSpring, San Antonio Housing Trust Public

Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, Freedom SA

Apartments, LP, and Ellison Hills Living GP, LLC, as recipients of federal financial assistance,

have separately and independently violated Section 504 by failing to cover the cost of reasonable

modifications for tenants or potential tenants with disabilities at Woodlawn Ranch Apartments

and Freedom Hills Ranch Apartments.

## INJURY TO PLAINTIFF

67.     Plaintiff FHCOGSA has suffered substantial, particularized, and concrete injuries

as a direct result of Defendants' unlawful conduct in the San Antonio region.

68.     Defendants' unlawful conduct, policies, and practices have frustrated and

complicated FHCOGSA's mission and ongoing work, drained its resources, and impaired its

ability to operate.

69.     FHCOGSA's mission is to ensure that people in South Texas have equal housing

opportunities. Plaintiff conducts fair housing investigations and advocates for individuals who

have been victims of housing discrimination. Plaintiff conducts educational programs and

activities including, but not limited to, trainings, conferences, publications, community events,

and social media alerts. FHCOGSA also works to increase the awareness of policymakers of fair

housing issues by meeting with local, state, and federal officials to ensure strong fair housing

laws and policies.

70.     FHCOGSA also maintains a Directory of Accessible Housing, which helps enable

people with disabilities to find suitable rental housing in San Antonio and Bexar County. The

Directory provides information about accessible units, eligibility criteria, price ranges, amenities,

school districts, nearby businesses, etc., for apartment complexes and other forms of housing in

San Antonio and Bexar County. In evaluating whether a development should be included in the Directory, Plaintiff also considers whether the housing community participates in any housing assistance programs, such as TDHCA's Housing Tax Credit Program. Thus, Defendants' failure to pay for reasonable modifications complicates and impairs FHCOGSA's ongoing work in assisting people with disabilities to find rental housing that they can afford and enjoy.

71.    Defendants' discriminatory conduct frustrated FHCOGSA's mission by interfering with its mission-related activities, impairing its ability to achieve its goals of ensuring equal access to housing opportunities, and harming the community that FHCOGSA serves.

72.    Defendants' discriminatory conduct thus forced FHCOGSA to engage in numerous activities to counteract the real-world effects of Defendants' unlawful conduct, policies, and practices. Among other things, FHCOGSA had to recalibrate its community outreach and advocacy efforts. It spent additional time and resources developing tenant surveys and education materials targeted at residents of Defendants' properties, as well as assisting those residents in obtaining reasonable modifications at Defendants' properties. To understand the degree of Defendants' noncompliance, FHCOGSA conducted five in-person tests of the Developments. FHCOGSA went above and beyond its routine activities and tailored its advocacy efforts to remedy the harm caused by Defendants.

73.    FHCOGSA also was forced to expand its education efforts. It launched a social media campaign on Facebook, Instagram, and Twitter, in both English and Spanish, to increase public awareness about the legal obligations of affordable housing providers to pay for disability-related reasonable modifications. It trained housing providers and presented information about reasonable modifications at consumer workshops, social services agencies, and community events.

74.     In carrying out activities to counteract the harm caused by Defendants, Plaintiff experienced a drain in its limited resources that negatively affected its ability to function and operate. Plaintiff was forced to divert significant staff time and funds away from other planned activities to engage in counteraction, for which it did not originally budget time or money. Counteracting unlawful conduct by Defendants prevented Plaintiff from engaging in other activities that are important to its mission. For example, FHCOGSA was forced to forgo or postpone several in-person rental tests and education and outreach activities that were scheduled for 2019.

75.     Unless enjoined, Defendants will continue to engage in the unlawful conduct described herein, and Plaintiff's injuries will increase because it will have to continue diverting resources to counteract Defendants' conduct.

76.     Defendants have engaged in the discriminatory conduct described herein intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for the rights of Plaintiff and the substantial harm caused to the residents of the San Antonio region.

77.     Defendants' discriminatory policies and practices are intended to deny and discourage, and have the effect of denying and discouraging, people with disabilities an equal opportunity to obtain affordable rental housing in the San Antonio region. These policies and practices adversely affect people with disabilities, are not justified by any legitimate business need or necessity, and cause injury to Plaintiff.

## CAUSES OF ACTION

**Count I (Against All Defendants): Violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.***

78.     Plaintiff incorporates by reference the allegations above.

79.     Defendants' acts, policies, and practices of failing to provide and pay for disability-related reasonable modifications, failing to engage in the interactive process with tenants who have requested reasonable modifications, requiring extraneous information about a tenant's disabilities and their need for modifications, and/or unduly delaying the provision of reasonable modifications – independently and taken together – have the purpose and effect of discriminating on the basis of disability.

80.     Defendants deliberately disregarded their disability-related LURA obligations to pay for reasonable modifications, while continuing to abide by the non-disability-related LURA provisions.

81.     Defendants' selective compliance with the LURAs has an adverse and disproportionate impact on people with disabilities as compared to similarly situated non-disabled people.

82.     There is no legitimate, nondiscriminatory explanation for Defendants' acts, policies, and practices.

83.     Defendants' acts, policies, and practices constitute discrimination and violate the Fair Housing Act, as amended, 42 U.S.C. § 3604, in that:

    a.   Defendants are liable for discriminating in the rental of a dwelling of and/or making unavailable or denying a dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(1); and

    b.   Defendants are liable for discriminating in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(2).

84.     As a result of the discrimination alleged in the previous paragraphs, FHCOGSA has sustained the injuries described herein.

**Count II (Against HomeSpring Residential Services, LLC, San Antonio Housing Trust Public Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, Freedom SA Apartments, LP, and Ellison Hills Living GP, LLC): Violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794**

85.     Plaintiff incorporates by reference the allegations above.

86.     Woodlawn Ranch Apartments and Freedom Hills Ranch Apartments receive federal financial assistance, including in the form of Project-Based Section 8 Rental Assistance from HUD.

87.     As owners or managers of Woodlawn Ranch and Freedom Hills Ranch Apartments, Defendants HomeSpring, San Antonio Housing Trust Public Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, Freedom SA Apartments, LP, and Ellison Hills Living GP, LLC are part of a program or activity that receives federal financial assistance, and must comply with Section 504 at Woodlawn Ranch and Freedom Hills Ranch Apartments.

88.     Defendants HomeSpring, San Antonio Housing Trust Public Facility Corporation, Hillcrest SA Apartments, LP, Hillcrest Living GP, LLC, Freedom SA Apartments, LP, and Ellison Hills Living GP, LLC discriminated and continue to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by refusing to pay for reasonable modifications for applicants and tenants with disabilities.

89.     As a result of the discrimination alleged in the previous paragraphs, FHCOGSA has sustained the injuries described herein.

**Count III (Against All Defendants): Violation of Texas Fair Housing Act, Tex. Prop. Code § 301.025**

90.     Plaintiff incorporates by reference the allegations above.

91.     Defendants' acts, policies, and practices of failing to provide and pay for disability-related reasonable modifications, failing to engage in the interactive process with tenants who have requested reasonable modifications, requiring extraneous information about a tenant's disabilities and their need for modifications, and/or unduly delaying the provision of reasonable modifications – independently and taken together – have the purpose and effect of discriminating on the basis of disability.

92.     Defendants deliberately disregarded their disability-related LURA obligations to pay for reasonable modifications, while continuing to abide by the non-disability-related LURA provisions.

93.     Defendants' selective compliance with the LURAs has an adverse and disproportionate impact on people with disabilities as compared to similarly situated non-disabled people.

94.     There is no legitimate, nondiscriminatory explanation for Defendants' acts, policies, and practices, including selective compliance of the LURAs.

95.     Defendants' acts, policies, and practices constitute discrimination and violate the Texas Fair Housing Act, Tex. Prop. Code § 301.025, in that:

    a.  Defendants are liable for discriminating in the rental of and/or making unavailable or denying a dwelling because of a disability, in violation of Tex. Prop. Code § 301.025(a); and

    b.  Defendants are liable for discriminating in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or

24

facilities in connection with such dwelling, because of disability, in violation

of Tex. Prop. Code § 301.025(b).

96. As a result of the discrimination alleged in the previous paragraphs, FHCOGSA

has sustained the injuries described herein.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment

in its favor, and against Defendants, as follows:

97. Declare that Defendants' discriminatory policies, practices, and conduct, as

alleged herein, are in violation of the federal Fair Housing Act and Section 504 of

the Rehabilitation Act;

98. Enter an injunction enjoining Defendants and their directors, officers, agents, and

employees from continuing to publish, implement, enforce, or otherwise engage

in the illegal conduct described herein and directing Defendants and their

directors, officers, agents, and employees to take all affirmative steps necessary to

remedy the effects of that conduct and to prevent additional instances of such

conduct or similar conduct from occurring in the future;

99. Award compensatory damages to Plaintiff in an amount to be determined by the

jury that would fully compensate Plaintiff for its injuries caused by the conduct of

Defendants alleged herein;

100. Award punitive damages to Plaintiff in an amount to be determined by the jury

that would punish Defendants for the willful, wanton, and reckless conduct

alleged herein and that would effectively deter similar conduct in the future;

101. Award Plaintiff its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

102. Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

Date: April 13, 2021
        /s/ Reed Colfax

Reed Colfax (Bar No. 471430)
Soohyun Choi*
Lila Miller*
RELMAN COLFAX, PLLC
1225 19th St., NW
Suite 600
Washington, D.C. 20036
Tel: 202-728-1888
Fax: 202-728-0848
Email: rcolfax@relmanlaw.com
Email: schoi@relmanlaw.com
Email: lmiller@relmanlaw.com

*Attorneys for Plaintiff Fair Housing Council of Greater San Antonio*

*admitted pro hac vice*